## ELIZABETH J. CARSON *v.* ANDREW CARSON.

1. MARRIAGE: NOT A CONTRACT WITHIN THE MEANING OF THE CONSTITUTION: POWER OF LEGISLATURE OVER.—Marriage is a personal relation between the parties, a civil status, created by the law and subject to the public will, and not to that of the parties. It is not a contract within the meaning of the constitutional prohibition in reference to the inviolability of contracts. Hence, the legislature has the general right to legislate on the subject of divorce.

2. DIVORCE: POWER OF LEGISLATURE OVER: OBTAINED BY SUIT IN CHANCERY.—The constitution of the State of Mississippi provides, "that divorces from the bonds of matrimony shall not be granted but in cases provided for by law, by suit in chancery." This clause of the constitution prohibits the legislature from granting divorces from the bonds of matrimony, and by necessary implication authorizes the legislature to provide in what cases such divorces may be allowed by suit in chancery.

3. DIVORCE: LEGISLATURE MAY AUTHORIZE FOR CAUSE HAPPENING BEFORE PASSAGE OF LAW: CHARACTER OF SUCH LEGISLATION.—The legislature may provide that

divorces may be granted for causes happening before the passage of the law. Such legislation is impolitic, unwise, and unjust.

4. POWER OF LEGISLATURE TO PASS RETROSPECTIVE LAWS: ENACTMENTS WILL NOT BE CONSTRUED TO HAVE RETROSPECTIVE EFFECT, UNLESS INTENTION MOST CLEARLY EXPRESSED.—The constitution of the State imposes no prohibition upon the power of the legislature to pass retrospective laws, but its enactments will not be construed to have a retrospective effect unless such intention is manifested by the clearest and most positive expression.

APPEAL from the Chancery Court of Washington county. Hon. J. S. Yerger, judge.

*W.* and *J. R. Yerger*, for appellant.

*Dixon* and *Percy*, for appellee.

ELLETT, J., delivered the opinion of the court.

An act of the legislature, approved February 9, 1860, provided " that in all cases where parties have, prior to the passage of this act, lived separate and apart for the period of four years, within this State, and either of them may desire to be divorced from the bonds of matrimony, and have not lived separate and apart by collusion, and with the intent of procuring a divorce, it shall be lawful for them, or either of them, to file a bill setting forth such desire, and upon due proof of such living separate and apart, it shall be competent for the court to decree a divorce from the bonds of matrimony." Acts of 1860, page 202.

The bill in this case shows that the parties had lived apart by mutual consent, under articles of separation, for more than four years before the passage of the act. A demurrer to the bill was overruled; and the only question raised here is whether the above act of the legislature is valid, the ground on which it is assailed being that it impairs the obligation of the contract of marriage.

Marriage is undoubtedly, to a certain extent, a civil contract. The observation of Sir William Blackstone, that " our law considers marriage in no other light than as a civil contract," is, however, made with reference to the jurisdiction which the courts of common law exercise over the subject, as contradistin-

guished from the holiness of the matrimonial state, and the sinfulness of unlawful marriages, which fall under the animadversion of the spiritual courts.

We have decided at the present term, in the case of *Magee and Wife* v. *Young*, that marriage itself, as a personal relation between the parties, is not a matter of contract within the meaning of the constitutional provision in reference to the inviolability of contracts. We regard marriage as a civil *status*, a matter *publici juris*, created by public law, subject to the public will, and not to that of the parties, who cannot dissolve it by mutual consent; that it is more than a contract, because it establishes fundamental domestic relations, affecting the welfare of the community, and because it is an institution of the State, founded on reasons of public policy. We have in effect recognized the proposition asserted by Chief-Justice Marshall, in the Dartmouth College case, that "the clause in the constitution respecting the obligation of contracts has never been understood to restrict the general right of the legislature to legislate on the subject of divorces." The same clause is found in our own State constitution, and it also contains the further clause, in reference to this particular subject, that "divorces from the bonds of matrimony shall not be granted but in cases provided for by law, by suit in chancery." While this clause plainly prohibits the legislature from granting divorces from the bonds of matrimony, it, by a necessary implication, authorizes it to provide by law in what cases such divorces may be obtained in the courts of chancery.

The only remaining inquiry is, whether the legislature may authorize divorces to be granted for causes happening before the passage of the act, and which at the time of their occurrence were lawful and innocent, and furnished no ground for such proceeding. Such legislation cannot be too strongly condemned as unwise, impolitic, and unjust. If this were a criminal law, and undertook to punish as a crime an act which was indifferent at the time of its performance, it would be void as *ex post facto*. But it cannot be regarded as an act of that character; and it impairs the obligation of no contract, and divests

no vested rights. It is only obnoxious to the objection that it is wholly retrospective in its operation. Such a statute partakes in its character of the mischief of an *ex post facto* law, as to all cases of crimes and penalties ; and in matters relating to contracts or property, it violates every sound principle. Courts of justice always express the strongest disapprobation of such legislation, and will never be persuaded that the legislature intends to give a retroactive effect to its enactments, without the clearest and most positive expression of such a purpose. But where an act is, like the present, retrospective only, and purports to operate alone upon acts that have already passed, and has no prospective operation whatever, there is no room left for construction, and courts are obliged, however reluctantly, to give effect to the intention of the framers. The constitutions of some of the States wisely interdict the passage of retrospective laws, except those of a remedial character. Ours contains no such provision, and we therefore are not at liberty to hold an act of the legislature to be void merely because of its retrospective character, when no constitutional provision has been violated.

The interlocutory decree of the court below, disallowing the demurrer, will be affirmed, and the cause remanded with leave to the appellant to answer the bill within sixty days.