[No. 14971.   Department Two.   May 15, 1919.]

HENRY J. PIERCE, *Respondent,* v. VIOLETTA E. PIERCE, *Appellant.*[1]

STATUTES (86)—RETROACTIVE OPERATION—DIVORCE STATUTES. Laws 1917, p. 353, authorizing a divorce where the parties are estranged and have lived separate and apart for eight years or more, must be given a prospective operation, and does not apply to estrangements which existed prior to the passage of the act.

STATUTES (68)—LEGISLATIVE CONSTRUCTION—RETROACTIVE EFFECT. An intent to make retroactive a divorce statute (Laws 1917, p. 353) authorizing a divorce where the parties are estranged and have lived separate and apart for eight years or more, is not shown by the fact that the legislature rejected an amendment inserting "after the year 1917."

DIVORCE (50-1) — JUDGMENT — CONCLUSIVENESS. The denial of a divorce to a husband upon the ground that he was at fault and had caused the separation is conclusive and a bar to a second action by him upon the ground of estrangement and inability to live together.

DIVORCE (67)—SUIT MONEY—AMOUNT. The allowances for suit money being largely discretionary, an allowance of $2,000 for the defense of an action in which the traveling expenses of defendant and her witnesses was more than $800, will not be disturbed.

CHADWICK, C. J., dissents.

Appeal from a judgment of the superior court for King county, Frater, J., entered January 21, 1918, upon findings in favor of the plaintiff, in an action for divorce, tried to the court.   Reversed.

*Graves, Kizer & Graves,* for appellant.

*Kerr & McCord,* for respondent, contended, *inter alia,* that the statute has a retrospective operation and

[1]Reported in 181 Pac. 24.

was intended to apply to estrangements that existed prior to its enactment. 36 Cyc. 1173, 1174; 2 Lewis Sutherland, Statutory Construction, § 674; *Cooke v. Cooke,* 164 N. C. 272, 80 S. E. 178; *Cole v. Cole,* 27 Wis. 531; *Van Hook v. Whitlock,* 2d Edw. Ch. (N. Y.) 304; *State v. Duff,* 80 Wis. 13, 49 N. W. 23; *Fitzpatrick v. Simonson Bros. Mfg. Co.,* 86 Minn. 140, 90 N. W. 378.

MOUNT, J.—This action was brought for divorce based upon subdivision 8, § 1, ch. 106, Laws of 1917, p. 353 (amending § 982, Rem. Code). The statute is as follows:

"Divorces may be granted by the superior court on application of the party injured, for the following causes: . . ."

Then, after enumerating seven subdivisions,

"(8) Where the parties are estranged and have lived separate and apart for eight years or more and the court shall be satisfied that the parties can no longer live together."

The complaint alleged, among other things:

"That long prior to the first day of January, 1909, the plaintiff and defendant became estranged, that unhappy differences arose between them and they realized that they could no longer live together as husband and wife, and that they have ever since continuously been and are now estranged. That on the first of January, 1909, the plaintiff and defendant, by reason of said estrangement and unhappy differences, mutually agreed to live separate and apart, each from the other, and entered into a written agreement of separation, bearing date January 1, 1909, which said agreement was acknowledged before a notary public by the said Henry J. Pierce on the 26th day of January, 1909, and by the said Violetta E. Pierce on the 17th day of April, 1909. That by the terms of said agreement the parties thereto not only agreed to live separate and apart, but the said plaintiff agreed that

he would not reside in the city of Buffalo, county of Erie, or within twenty-five miles of any boundary of said city, and the said defendant agreed that she would not reside in the city of New York, or within twenty-five miles of any boundary of said city.

"That said parties by said agreement stipulated that each should be released and discharged from the performance of all marital duties as fully and completely in all respects as if the parties had never intermarried.

"That said separation has been continuous and without interruption for a period of more than eight years prior to the date of the commencement of this action, and that said estrangement has existed for a period of more than eight years prior to the commencement of this action, and that the plaintiff and the defendant can no longer live together as husband and wife."

For answer, the defendant plead three separate defenses, to the effect that the separation was caused solely by the fault of the plaintiff; that the plaintiff, in January, 1908, commenced an action for divorce in the circuit court of the city of St. Louis, Missouri, in which he alleged that the defendant had abandoned him and had rendered to him such indignities as made his life intolerable; that the defendant appeared in that action and it was there determined that the plaintiff had abandoned the defendant, and the divorce was denied; that, subsequently, in the year 1909, the plaintiff brought an action in Spokane county, in this state, against the defendant, upon substantially the same grounds; that a finding was made in the case that the plaintiff had abandoned the defendant, and a divorce was denied; that, after the first action, hereinbefore named, was brought by the plaintiff, in Missouri, the defendant, being a resident of the state of New York, brought an action in that state to require the plaintiff to provide maintenance and support for herself and

their children; and that that action for support and maintenance was compromised by the plaintiff entering into an agreement to turn over to the defendant certain property and to pay her $300 per month for the support of herself and their children. The defendant, for further and separate answer, alleged, in substance, that since the year 1911 she had been willing to resume marital relations with the plaintiff and live with him as his wife wherever he might elect to make their home. The defendant prayed that the action be dismissed and that she should have an allowance for suit money and attorney's fees. On the trial of these issues, the court granted the plaintiff a divorce, but required him to pay to the defendant the sum of $400 per month for the support and maintenance of herself and their children, and $2,000 suit money and attorney's fees. The defendant has appealed from that judgment.

The first contention made by the appellant is that subdivision 8 of the divorce statute is not retroactive. This subdivision was an amendment to the original divorce statute. It was passed in 1917. The amendment is quoted above. It will be noticed from a reading of the statute that it does not appear upon its face to relate back beyond the date of its passage. It simply says that

"Divorces may be granted by the superior court on application of the party injured, for the following causes: . . .

"(8) Where the parties are estranged and have lived separate and apart for eight years or more and the court shall be satisfied that the parties can no longer live together."

No pretension is made in this case that the parties have become estranged and have lived separate and apart eight years since the passage of that amend-

ment. The sole contention is that the parties became estranged and have lived separate and apart for eight years, the greater portion of which time, necessarily, was prior to the enactment of this amendment. We are asked now to give this statute a retroactive effect so as to make it apply to estrangements which existed prior to the passage of the act. In *Graves v. Dunlap,* 87 Wash. 648, 152 Pac. 532, Ann. Cas. 1917B 944, L. R. A. 1916C 338, we said:

"It is a rule of construction that a statute will not be given a retroactive effect unless by its terms it is shown clearly that that was the legislative intent."

In 14 Cyc. 594, it is stated:

"A statute declaring the causes for which divorces may be granted is ordinarily to be given a prospective operation only and does not authorize a divorce for a specified cause which occurred before the statute was enacted."

In Nelson on Divorce and Separation, vol. 1, at § 12, it is stated:

"The obvious intent is that the law will apply to misconduct occurring after the passage of the act. Under some constitutions an act making prior misconduct a cause for divorce will be held void so far as retrospective. . . . Whether void or not, the courts generally decline to give such statutes a retrospective interpretation. The rule is that statutes are to be given a prospective operation only, unless the terms show clearly that a retrospective operation was intended. A divorce law will not be given a retrospective operation even though the terms might admit of it."

In *Jarvis v. Jarvis,* 3 Edwards Ch. (N. Y.) 462, where a new section had been added to the statute of New York providing for limited divorces, extending the right thereto to cases in which it had not theretofore existed, it was said:

"In order to give her the benefit of the remedy which the bill seeks, the revised statutes, as applicable to her case, must be construed to have a retrospective effect. It is a rule, however, never to apply a statute retrospectively by mere construction. If its terms are such as clearly to indicate that the legislature intended it should operate upon or apply to past transactions of a civil nature, then the courts may permit it so to apply, provided it takes away no previously vested rights, nor impairs the obligations of contracts within the meaning of the federal constitution. But, if a statute is silent in its terms or at all ambiguous in relation to its effect and application to past events, courts of justice are bound not to apply it to any other than to those which have arisen since the law took effect and are not at liberty to consider it other than as a prospective law operating prospectively upon the affairs and conduct of men."

To the same effect are *Barrington v. Barrington*, 76 South. (Ala.) 81; *Carson v. Carson*, 40 Miss. 349. This is a rule of almost universal application. An examination of the statute in relation to divorce does not disclose any intention on the part of the legislature that the act should have a retroactive effect. It must, therefore, be held not retroactive.

Counsel for the respondent cite the record of the legislature referring to the passage of the act, to the effect that an amendment was proposed thereto as follows: "That section 1, line 17, insert 'after the year 1917.' " This amendment was lost. The argument apparently is that, because this amendment was lost, it shows an intention on the part of the legislature that the act should take effect retroactively. If we may examine the legislative record in order to determine the legislative intent—a question we do not now decide—we are of the opinion that the result claimed does not follow. The reason the amendment was lost was plainly because the legislature concluded

that the amendment was not necessary, for the reason that the act would not take effect retroactively even if that amendment were not made. The mere fact that this amendment was lost, does not disclose that the legislature intended this amendment to the divorce law to be retroactive. The statute not being retroactive, it follows that respondent was not entitled to a divorce.

There is another equally good reason why the divorce should not have been granted. The statute provides that divorces may be granted by the superior court on the application of the party injured, for the causes therein named. It was conclusively shown upon the trial that the parties to this action, in two other cases—one in the state of Missouri and the other in this state—had litigated the question of fault for the separation, and that in each of those cases it was determined that the respondent was at fault and not the appellant. In the case which came to this court (*Pierce v. Pierce,* 68 Wash. 415, 123 Pac. 598), the principal facts relating to the history of the case and parties are set out. It is unnecessary to again set them out here. In that case, referring to the question of fault for the separation, we said:

"The record convinces us that appellant has deserted his wife and children without just cause. . . . There is no showing of conduct on respondent's part which we can accept as an excuse for appellant's abandonment of her and the children. . . . No sufficient showing has been made to justify us in awarding a decree in appellant's favor against the protest of the respondent who has done no wrong. In her pleadings and evidence, she has alleged and testified that she will again receive appellant in her home; that she will live with him as his wife; that she will do all she can to renew their former relations and make him a happy home, and that she will forgive and forget the past.

These offers, which she has repeatedly made and still makes, have been continuously and persistently rejected. The record is devoid of even a suggestion that he at any time has sought a reconciliation, or consented to live with his wife and family.''

That case adjudicated the question and effectively determined who was at fault for the separation. This court has, upon different occasions, said, in substance, that a divorce will not be granted to a husband who is wholly at fault. *Johnsen v. Johnsen,* 78 Wash. 423, 139 Pac. 189, 1200; *Maloney v. Maloney,* 83 Wash. 656, 145 Pac. 631. It follows, for this reason, that the trial court should have denied a divorce to the respondent.

Appellant further contends that the allowance for costs and attorney's fees made by the lower court was entirely insufficient. The appellant testified that her expenses in coming to this state from Buffalo, New York, with her witnesses, were more than $800, and this did not include her living expenses while on the way and while here. The writer is satisfied that, under the circumstances of the case, the allowance made by the lower court should be doubled; but we are not in harmony upon this question, and since the matter is largely discretionary with the lower court, we decline for that reason to direct any further allowance.

For the reasons above given, that part of the judgment of the lower court granting a divorce is reversed.

Appellant will recover her costs.

PARKER and FULLERTON, JJ., concur.

HOLCOMB, J. (concurring)—I concur in the reasons expressed above and the reversal of the case, but am convinced appellant should be awarded double the allowance of suit money and attorney's fees.

CHADWICK, C. J. (dissenting)—The court holds that the act of 1917, Laws 1917, p. 353, § 1, subd. 8, amend-

ing § 982, Rem. Code, and adding thereto as a ground for divorce,

"Where the parties *are* estranged and *have* lived separate and apart for eight years or more and the court shall be satisfied that the parties can no longer live together,"

is not retroactive, and for that reason respondent cannot predicate an action upon an estrangement occurring before the passage of the act, albeit the parties have been estranged and have lived separate and apart for more than eight years prior to the beginning of the action.

That the amendment is not a bill of attainder or an *ex post facto* law, goes without saying. The power of the legislature to enact retroactive—or, more aptly to the case at bar—retrospective laws, provided they do not impair the obligation of existing contracts, is not denied; it is admitted by counsel, and may be passed without extended discussion.

The question is not, then, whether the legislature had power to pass the law, but whether the legislature intended that the remedy should operate as well upon preexisting, existing and future causes. It has been held in *Graves v. Dunlap*, 87 Wash. 648, 152 Pac. 532, Ann. Cas. 1917B 944, L. R. A. 1916C 338:

"It is a rule of construction that a law will not be given a retroactive effect unless by its terms it is shown clearly that that was the legislative intent;"

and so, in *Jarvis v. Jarvis, Barrington v. Barrington, Carson v. Carson, supra,* and the texts cited in the majority opinion.

The best statement of the rule I have found is in *Carson v. Carson,* 40 Miss. 349, where the court, finding itself drawn up to the snubbing post of the law, condemned the policy of passing retrospective laws,

but held that the court was not, ''at liberty to hold an act of the legislature to be void merely because of its retrospective character, when no constitutional provision has been violated.'' The act in that case was held to be obnoxious, not because it was retrospective in the sense that it gave a remedy for preexisting causes, but because the act purported ''to operate alone upon acts that have already passed, and has no prospective operation whatever.''

In the *Carson* case we have the rule and its limitation, which is, the legislature having power, an act will not be rejected as retrospective unless it purports to operate ''alone'' upon past events.

After the very proper holding that a law will not be given retroactive effect unless by its terms it is clearly shown that that was the legislative intent, the writer of the opinion finds boldly that the rejection of an amendment seeking to fix the operation of the law to causes arising after 1917 indicates the legislative intent that the act should only operate in the future. He says further:

''The reason the amendment was lost was plainly because the legislature concluded that the amendment was not necessary, for the reason that the act would not take effect retroactively even if that amendment were not made.''

This is no more than judicial dogmatism. It is unsound. It violates the natural inferences arising from the conduct of the legislature and convicts it of rejecting a declaration of record of its true intent and a deliberate purpose to encourage, if not to create, a doubt that arises in all cases where acts are remedial of concurrent and continuing wrongs or conditions.

As I read the record, a rejection of the amendment indicates a legislative intent to make the act appli-

cable to existing and continuing conditions. If we are to credit the legislature with sufficient technical learning to know that the amendment was not necessary because it knew the act was prospective only, is it not more natural to infer that, with such knowledge, it would have removed all questions and saved the issue now presented and which has arisen in hundreds, if not thousands, of like cases? The effect of the court's holding is that, whereas some member of the legislature said, "Let us agree that this act is prospective only," and the legislature by vote of its members rejected his proposal; therefore the act is not retrospective. The fact that the legislature, by its solemn and formal vote, said that the act should *not* be prospective only, is a legislative declaration that it intended that it should be retrospective. To meet the demands of this court, the legislature must hereafter treat every subject-matter by both an affirmative and a negative vote; must first vote that "it shall be," and then vote that "it shall not be."

Admitting then that retrospective laws are not favored by the courts, it does not follow that the act in question is either retrospective or retroactive in a legal sense. The character of an act is the most important guide in determining whether it is retrospective. Remedial statutes, although retrospective, are not regarded as obnoxious *per se*. The statute in question involves no vested rights; its purpose is to cure an evil offensive to society—that is, the living apart, under a tie of matrimony, of persons who are permanently estranged. The authorities sustain me in the assertion that a remedial statute is not retrospective or retroactive because a part of the requisites of its actions are drawn from a time antecedent to its passage, or as said by Lord Denman, in *R. v. St.*

*Mary,* 12 Q. B. 127: "Because a part of the requisites for its action is drawn from time antecedent to its passing." Endlich, Interpretation of Statutes, § 280.

The rule quoted by the majority is not the only rule of statutory construction; there are others, one of which is as well grounded as the one relied on and more consists with the duty of courts to declare. and give effect to the legislative will; it is, where a statute is remedial, either of past or future events or conditions, every reason exists for a liberal interpretation.

It appearing to me that the intent of the legislature is made certain by reference to the terms and provisions of the act, *i. e.,* ". . . where the parties *are* estranged and *have* lived separate and apart &c," and such intent having been asserted by an affirmative act of the legislature, its attention being riveted upon the very point at issue, the amendment should be held to apply to a condition existing prior to and at the time the act was passed.

The other ground upon which the court rests its decision is that, although the act be upheld as applying to past events, a divorce can only be granted to *the injured party,* and it having been twice judicially determined that respondent had no ground for divorce, he is therefore not injured and may not recover.

Under the law as it was at the time the amendment was passed, divorces could be granted only (with one exception to be hereafter noted) where there had been a positive injury, a wrong visited by one spouse upon the other. But it is the duty of the courts to give effect to a statute, if it is possible to do so without violating settled rules; and the words "the party in-

jured'' should either be rejected as inconsistent with the eighth subdivision of the act as amended, which is the part relied on by respondent, or we should say that, society in general having an interest in all matters of marriage and divorce, where the parties to a marriage are estranged and have lived separate and apart for eight years or more and the court shall be satisfied that the parties can no longer live together, either party may be in law the injured party and apply for a divorce. In other words, both parties are innocent and both parties are injured if the fact of estrangement be established, and either or both may apply for a divorce upon that ground. "Injured," "to be injured," "injured party," does not necessarily imply a physical or a moral wrong. It may mean any deliction, wrong, or condition that would bring a party asserting it within the bound of a statute which recognizes it as a cause of action. It is not a question of such injuries as might be involved in the adultery of one or the other of the spouses, abandonment, cruel treatment, drunkenness, etc.

"Statutes relating to divorce should receive a liberal and equitable construction. The legislative intent should be ascertained and carried out in a manner calculated to afford the intended remedy. Such statutes are not penal and should not be given a strict construction. They are to be construed with reference to the apparent policy of the legislature as gathered from the entire act. To execute this policy, the meaning of the statute may be contracted or expanded from the ordinary or literal meaning of the terms." Nelson, Divorce, § 12.

This must be so, if the amendment of 1917 is to be sustained at all; for, if a party may not be an injured party in the sense in which I have outlined, no divorce could ever be granted upon the ground of estrange-

ment continuing for any period of years, and the act of the legislature was abortive. For before a divorce could be granted upon the ground of estrangement, the complaining party would have to make a showing of injury; that is to say, make a showing of some of the causes set out in the other subdivisions of the act, and the divorce (if one were granted) would be because of these positive injuries and not because of the estrangement; in other words, the law will be exactly as it was before the amendment of 1917 was passed.

My thought may be further illustrated and, as I believe, may be sustained by a reference to subdivision 8 of the original act (section 9 of the act as amended). In 1886, the legislature amended the divorce statute so as to provide for a divorce, "In case of incurable chronic mania or dementia of either party, having existed for ten years or more, the court may, in its discretion, grant a divorce." The effect of the court's opinion is to write this subdivision out of the books; for how can it be said that any spouse may be "injured," in the sense relied upon by the majority, when the other spouse has become the involuntary victim of incurable chronic mania or dementia? Yet, in a broad legal sense, this may be so, for there may be, as I have undertaken to make plain, an injury in a sense other than a positive wrong.

I apprehend that all of the judges of this court who have sat as superior court judges have granted divorces under the eighth subdivision of the act—the ninth subdivision of the amendment—being the insanity clause, and felt that they were obeying the will of the legislature as it is to be gathered from the act, and that an injury, in the sense of positive wrong, was not essential to the granting of a decree.

That the parties in this case are estranged is certain. No one can read the record and come to any other conclusion than that the appellant is not sincere and is not truthful in asserting her desire for a reconciliation. The court below, after a careful trial, held:

"It is manifest to the court that the defendant is not sincere nor truthful in stating that she desires a reconcilation between the plaintiff and herself; and that the defendant is estranged from the plaintiff, and that the plaintiff is estranged from the defendant."

Appellant has no intention, and has had no intention, of resuming marital relations with respondent. She is standing upon technical right and insisting that a marriage that has long since ceased to be real shall remain as a burden to the parties and as an offense to society.

My conclusion would eliminate all questions of *res adjudicata*, for, if it is the law in cases of estrangement that either or both parties may be the party injured because of the continuation of an intolerable relation, it being established that the estrangement is permanent and that the parties will no longer live together, the present action rests in a new cause of action that was not in any way passed upon or determined by the court in the previous suits, and respondent should be given his remedy.