[No. 8549.   Department One.   March 24, 1910.]

ERNEST L. BICKFORD, *Respondent*, v. BELL BICKFORD, *Appellant*.[1]

DIVORCE— GROUNDS — INCOMPATIBILITY — EVIDENCE — SUFFICIENCY. Rem. & Bal. Code, § 982, authorizing a divorce for certain causes and "any other cause deemed by the court sufficient, and the court shall be satisfied that the parties can no longer live together," does not authorize a divorce merely because the parties cannot live together; and it is error to grant a divorce to a husband upon evidence of incompatibility, quarrels and irritation for which he was as much to blame as his wife, and no other sufficient cause appears.

Appeal from a judgment of the superior court for King county, Geo. H. King, Esq., judge *pro tempore*, entered November 12, 1909, upon findings in favor of the plaintiff, in an action for a divorce, after a trial on the merits.   Reversed.

*Kerr & McCord*, for appellant.

*Peters & Powell*, for respondent.

PER CURIAM.—This is an appeal from a judgment of the superior court of King county, granting the respondent a divorce from the appellant.   In his complaint the respondent charged the appellant with personal indignities rendering his life burdensome.   He alleged that he was a physician and surgeon, engaged in the general practice of his profession; that his wife was of a jealous nature, having a nervous tem-

----

[1]Reported in 107 Pac. 837.

perament and a violent temper, and was not content with letting him practice his profession with the secrecy it required, but would insist on knowing who he was treating at particular places, whether they were male or female patients, the disease the patient was afflicted with, the kind of medicine he was administering, how long he stayed at the residence of his respective patients, and many other matters which due regard for the ethics of his profession and justice to his patients required him to keep to himself; that his refusal to answer many such questions would cause his wife to become violently angry, and the result was a constant quarrel between himself and his wife, all of which rendered him nervous and sick, thus aggravating and making worse an incurable disease with which he was suffering, leaving him unfit to follow his profession; that this conduct on the part of the wife had continued for more than seven years last past, and during the time he lived at his home, was practically of daily occurrence; that it would at times become so unbearable as to compel him to leave his home and take up his residence elsewhere in the city of Seattle in order that he might recover from nervousness and illness caused thereby; and that he was living separate and apart from his wife at the time of filing his complaint.

In her answer to the complaint the appellant denied generally all the allegations of misconduct on her part, and pleaded affirmatively that she had always demeaned herself as a dutiful and obedient wife.

The evidence of neither of the parties given at the trial quite sustained the allegations of their respective pleadings. The respondent did testify to constant bickerings and quarrels between himself and his wife, and to matters tending to support his complaint in other respects. But in giving particulars he leaves a strong inference that some of the inquiries of the wife did not arise so much from jealousy or so much from a desire to know who his patients were and the several diseases as it did to know how the family was getting

along financially, and that it was these inquiries more than the others that so annoyed the respondent. He makes it clear, also, we think, that the quarreling and bickering were not at all times the fault of the wife. His illness became more aggravated as the pressure of his work increased, and this tended to make him cross and irritable, so much so that he would lose his temper with his children when assisting them with their lessons, and it is made clear that at times he did not bear with much patience even the simplest inquiries on the part of his wife. He testified to leaving his home on two different occasions because of quarrels with his wife, and of returning at her request and solicitations under the promise that she would let him take care of his business in his own way; also, that he had left the third and last time some two and a half years before the trial with the belief that it was impossible for him to live at home. He said, also, that he had no intention of returning, no matter what the result of his suit was, as he would never thereafter live with his wife.

The appellant in her testimony also supported in the main the allegations of her answer. She denies absolutely that she even quarreled with her husband. She testified that he would often become irritable and quarrelsome, when he would use towards her much profane language, but that she did not answer him back, but would often cry because of his treatment of her. She denies ever having inquired into matters relating to his practice, or that she ever desired to know who he was treating or the sex of his patients, or the diseases with which they were suffering. She testified, also, that she did not know why her husband quit his home and took up his residence elsewhere. She admits soliciting him to return and promising him to do better, yet she says that when making the promise she did not know in what way she had offended. In fact, she denies in detail all the allegations of wrongdoing the husband makes against her. There is, however, in the record some things that indicate that she

was not as frank as she would have us believe. For example, there is a copy of a letter in the record from herself to her husband, evidently written with the idea that it might sometime see the light of the world, in which she upbraids him for his shortcomings and makes a detailed recital of her supposed wrongs in a way that plainly shows she was not unfamiliar with the part, and we doubt not that the respondent had heard the same thing many times from her lips; and a witness, also, whose truthfulness is not to be questioned, recites a conversation with the appellant which shows that she did know the reasons given by the respondent for leaving home.

But the record does something more than this. It makes it plain that the appellant might have admitted all that she has seemingly improperly denied, and still not have forfeited her title to respect as a dutiful and faithful wife. Her's has been the heroic part. The parties have two children, a daughter aged fifteen years, and a son aged thirteen. The daughter has been epileptic since her infancy, and requires the almost constant care of some one. The mother, since the birth of her son, has been afflicted with articular rheumatism, which at all times causes her more or less pain and sometimes renders her almost helpless. Yet, notwithstanding her infirmity, she has cared for her daughter, kept lodgers to help out the family income, performed her household duties, all for the greater part of the time without domestic help. It would seem that if at times her burdens caused her to cry out for relief, common justice would forbid laying a penalty upon her for so doing.

The respondent's conduct appears base and mean, when compared with that of the appellant. Doubtless his infirmity furnished him a measure of excuse, but it would hardly seem to justify his conduct in its entirety. By his own story, he is ill-tempered and profane, and the record convicts him of selfishness in the extreme. If a sacrifice was required to be made, it seemed to fall upon the wife, while the periods of recreation always fell to his share. Indeed, the only time he

seems to have found during all their married life when the wife could leave her home for a rest and change was since he left her the last time. He persuaded her to take a short trip north on an Alaskan steamer. No sooner had she gone, however, than he entered the house which he had not been in for a year or more, and stripped it of its library and, as his wife says, practically all of the valuable furniture, curios and bric-a-brac they possessed. He, of course, belittles the transaction, saying the articles taken were few in number and of no considerable value, but a list of them is in the record, and it supports the wife's story rather than his own. Her counsel contend that his sole purpose in persuading her to take the trip was to give him an opportunity to take those articles, and we are afraid the contention is well founded. If it be so, it exhibits a littleness we are seldom called upon to record.

The lower court granted the respondent a divorce on the ground that it was satisfied that the parties could no longer live together; but this is not a sufficient cause for divorce, under the statute. It is true that the statute, after enumerating certain causes for which divorces may be granted, provides: "And a divorce may be granted upon application of either party for any other cause deemed by the court sufficient, and the court shall be satisfied that the parties can no longer live together." [Rem. & Bal. Code, § 982.] But this does not authorize a divorce without some distinct cause found by the court which it shall deem sufficient. It is not enough that the record may convince the court that the parties can no longer live together. Some cause for that condition must be found, and the cause must not be brought about by the misconduct of the party seeking the divorce. As we said in *Wheeler v. Wheeler*, 38 Wash. 491, 80 Pac. 762:

"The trial judge evidently labored under an impression that he was authorized to grant a divorce upon the finding that the parties can no longer live together. But there is no such provision in the statute. Bal. Code, § 5716, provides, that the court may grant divorces for certain causes therein

named, and, in subdivision 7 of that section, are these words: 'and a divorce may be granted upon application of either party for any other cause deemed by the court sufficient, and the court shall be satisfied that the parties can no longer live together.' But this section does not say, and was not intended to mean, that the mere fact that the parties can no longer live together is sufficient upon which to base a decree of divorce. According to the plain wording and meaning of the section, there must be some cause other than those stated in the section deemed by the court sufficient; and, in addition thereto, the court shall be satisfied that the parties can no longer live together. The cause, of course, must be stated in the complaint."

See, also, *Poler v. Poler*, 32 Wash. 400, 73 Pac. 372; *Stanley v. Stanley*, 24 Wash. 460, 64 Pac. 732; *Colvin v. Colvin*, 15 Wash. 490, 46 Pac. 1029. If, therefore, we should take the respondent's assertion to the effect that it is impossible for him and his wife to longer live together at its full value, it would not justify the decree of the lower court.

Counsel for respondent however well say that if a sufficient cause is shown by the record why the parties cannot longer live together this court will affirm the judgment notwithstanding the trial court made no finding in regard thereto. But we cannot follow them in their contention that a sufficient cause does appear in the record. We think the respondent's abandonment of his home was wholly uncalled for, and unwarranted by any act on the part of his wife.

The decree appealed from is reversed, and the case remanded with instructions to dismiss the action.