[No. 9757.   Department Two.   May 11, 1912.]

## HENRY J. PIERCE, *Appellant*, v. VIOLETTA E. PIERCE, *Respondent*.[1]

DIVORCE—GROUNDS—INDIGNITIES—EVIDENCE—SUFFICIENCY. A divorce sought by a husband on the ground of indignities is properly denied, where it appears that the wife's impatient and bitter remarks made in the presence of the children, which constitute the only substantiated charge against her, were provoked. by the conduct of the husband, who had deserted his wife and family.

DIVORCE—GROUNDS—INABILITY TO LIVE TOGETHER. Rem. & Bal. Code, § 982, subd. 7, authorizing a divorce "for any other cause deemed by the court sufficient, and the court shall be satisfied the parties can no longer live together" should not be granted against a wife who is not at fault and who is willing to attempt to continue the marriage relation, simply because it appears that the parties can no longer live together; since there must be some other sufficient cause.

DIVORCE—COSTS—ATTORNEY'S FEES. On appeal by the husband from the dismissal of his divorce action, the supreme court will not allow further costs to the wife, where the trial court allowed her $2,000 for expenses and $3,000 for attorney's fees, and she is financially able to meet additional expenses incurred.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered July 1, 1911, dismissing an action for divorce, after a trial on the merits. Affirmed.

*Danson & Williams, Nuzum & Nuzum*, and *Sullivan & Christian*, for appellant.

*Graves, Kizer & Graves*, for respondent.

CROW, J.——Action for divorce by Henry J. Pierce against Violetta E. Pierce. The trial court dismissed the complaint and entered judgment in favor of the defendant in the sum

[1]Reported in 123 Pac. 598.

of $5,000, to defray her reasonable costs, expenses, and attorney's fees. The plaintiff has appealed.

At the close of the evidence, the trial judge orally announced his findings and conclusions, but no written findings of fact or conclusions of law were signed or entered. Appellant and respondent were married at Philadelphia, Pennsylvania, on November 12, 1881, at which time appellant was without any particular estate. For many years they lived in Buffalo, New York, where respondent and their children now reside. Eight children have been born, issue of the marriage, the oldest, a daughter, now about twenty-eight years of age, and the youngest, a son, now about eight years of age. Appellant has been successful and has accumulated valuable property. Prior to the year 1906 he conveyed to his wife the home property in Buffalo, valued at $50,000, and certain revenue producing stocks and bonds valued at $90,000. In October, 1906, at appellant's request, or at least with his consent, respondent and the five youngest children made a trip to Europe, remaining in Switzerland until September, 1907. Later the three older children joined respondent in Switzerland. During their absence appellant made monthly allowances to respondent which, with the revenues from her stocks and bonds, amounted to about $1,000 per month. When respondent and the children returned to this country they did not return to Buffalo, but went to Yonkers, New York, where they resided for some months.

While respondent and the children were abroad, appellant rented their home and moved to St. Louis, Missouri, and claimed a residence there. On January 2, 1908, he commenced a divorce action in the circuit court of the city of St. Louis. In his petition he alleged abandonment and that, in numerous instances covering a period of fourteen years, his wife had offered such indignities to him as to render his condition intolerable. Service was made upon respondent in Yonkers, New York. She appeared, denied the allegations of the petition, and defended the action. On the trial, appel-

lant abandoned the charge of desertion, and the trial judge, after hearing the evidence, found that the plaintiff was not the innocent or injured party, that he was not entitled to the relief prayed, and on May 1, 1908, dismissed the action.

During the pendency of the St. Louis action, respondent and her children returned to their home in Buffalo. Thereafter appellant returned to Buffalo, remaining a short time, but neither residing with nor visiting his family. Within a brief period, appellant settled his business affairs in Buffalo, resigned his position as manager of a transportation company, and removed to New York City, where he engaged in other important and profitable business enterprises, with an office at 165 Broadway, his family remaining at Buffalo. After the dismissal of the St. Louis action, appellant ceased making allowances to his wife in addition to her own income.

About January 1, 1909, written articles of separation were prepared and signed by appellant and respondent, but were not delivered until July, 1909, their delivery being delayed by reason of the inability of the parties to agree upon the manner in which certain paid-up insurance policies upon appellant's life should be assigned to respondent. Pending these negotiations and the disagreement relative to the policies, appellant made no allowances to respondent for the support of herself and children. Thereupon respondent, on or about June 1, 1909, commenced an action in the supreme court of the county of Erie, in and for the state of New York, for a divorce *a mensa et thoro*, and for a decree compelling appellant to provide maintenance and support for herself and children. She alleged abandonment, that she had taken the trip to Europe by reason of appellant's insistence, that he did not permit her to return to Buffalo, which caused her to temporarily reside in Yonkers, and that he had ceased providing for the support of herself and her family. Her complaint also contained the following allegation:

"The parties hereto, together with their children, lived harmoniously up to about the month of October, 1906. That

14—62 WASH.

shortly before said month of October, said defendant was seized with an attack of typhoid fever while at the city of New York and was under the care of a trained nurse . . . for some weeks, and plaintiff alleges the fact to be that said defendant became infatuated with said trained nurse and is still so infatuated to this day. That after said defendant recovered from his attack of illness and returned to the city of Buffalo he began to be irritable with plaintiff and with members of the family and began to show signs of unrest and unwillingness to remain with the said plaintiff and his said family and became morose and remained at home very little, although they lived in a house owned by this plaintiff on Summer street in the city of Buffalo, New York, and although all the comforts of the home were provided for him there, as they had been during his married life. That he remained away most of the time from his family, making frequent visits to New York, and visiting New York much more frequently than he had before that time."

Shortly after the filing of this complaint, appellant yielded to respondent's demands relative to the assignment of the life insurance policies. The contract of separation was thereupon delivered, and respondent's action for a divorce *a mensa et thoro* was dismissed.

The separation agreement, which is of great length, recites that unhappy differences had arisen between the parties; that they had mutually agreed to live separate and apart from each other; that respondent should retain as her separate property the home in Buffalo and the $90,000 of securities theretofore assigned to her; that in addition thereto, appellant should pay to her $300 per month for the maintenance of herself and children until the children should arrive at the age of twenty-one years; that respondent should release any and all interest or claims in or to appellant's property; that she should sign deeds and instruments of release upon his demand; that appellant should not live within twenty-five miles of Buffalo without respondent's consent; that respondent should not live within twenty-five miles of New York City where appellant then resided; that respondent should not disturb or interfere with appellant in

any manner; that respondent should have the care, custody and education of the children, and that appellant should be permitted to visit them and have them visit him under conditions and at times in the contract stipulated.

In September, 1909, appellant severed his business connections in New York City, moved to Spokane, became interested in many important enterprises in this state, and on October 1, 1910, commenced this action. Some question is raised as to whether he obtained a legal residence in Spokane. Without discussing the evidence, we will state our conclusion that he had, and that as far as the question of residence is concerned, he is entitled to prosecute this action.

This cause was finally tried on the third amended complaint, the answer, and the reply. The pleadings cannot be stated even in a condensed form. Appellant alleges that he seeks a divorce because of the ungovernable temper, jealousy, and malicious and vindictive disposition of respondent; that she, at divers times after the dismissal of the St. Louis action, had conducted herself in such a manner as to alienate from appellant the affections of their children; that she had, in the presence of the children, charged him with being a wicked man, and with having run off with a nurse; that she had destroyed photographs and pictures of appellant which belonged to the children; that she would not permit the children to keep his pictures; that she had prohibited the children writing to appellant, and that on the streets of Buffalo she said to one Margaret B. Shaw, an employee of appellant, in an insulting and taunting manner: "You must be proud of your employer, Mr. Pierce. I have driven him out of Buffalo and will drag his name through the dust further before I am through with him." Other charges of a kindred nature were made. Appellant also pleaded the articles of separation and the complaint for a divorce *a mensa et thoro* filed by his wife in the supreme court of Erie county, New York, and further alleged:

"That about the middle of March, 1909, while plaintiff

was transacting his business at his office at 165 Broadway, New York City, and then and there dictating to Margaret B. Shaw, a stenographer then in his employ defendant entered said office and in a violent and threatening manner advanced toward the plaintiff and stated in substance as follows: 'I came to tell you what I think of you. I know you are living in open adultery with a woman in this city and I know of several others whom you have been intimate with, but I will have my revenge. You will never be free as long as I live. All I want is to keep you from getting a divorce and if you ever try it again I will show you up for what you are.' Said defendant then struck at plaintiff's face and said 'I could kill you;' plaintiff raised his arm to protect his face and received the blow from defendant on his arm. Plaintiff requested said defendant to leave the office and said defendant then said in a violent and vindictive manner, 'Yes, I'll go. I never want to see you again, you beast;' and then turned to go and facing Miss Shaw said in a vindictive and malicious manner, 'There is one of your fine women friends.' "

Respondent answered with denials and affirmative allegations. She also pleaded the St. Louis divorce action and its dismissal.

The only oral evidence produced by appellant to sustain the allegations of his amended complaint was given by himself, by his former stenographer Margaret B. Shaw who had been employed by him for many years in Buffalo and New York City, and by one May Berguer, a Swiss nurse and governess whom Mrs. Pierce had employed when in Switzerland, whom she had brought to this country, and whom she had retained for some two or three years. To contradict this testimony, respondent produced the evidence of herself and of seven of her children. After hearing the evidence, the trial judge orally announced his conclusion that the testimony of May Berguer was fully met and contradicted by that of the respondent and her children. As to the scene alleged to have occurred in appellant's New York office, the trial judge, who saw the witnesses and passed upon their credibility, said:

"The matter of what occurred in New York City in

March is the only matter, in my mind, which approaches any-
where near establishing any misconduct on the part of the
defendant. As to that, taking the testimony, the naked testi-
mony of the parties, that of Mr. Pierce and Miss Shaw on
one side, and that of Mrs. Pierce on the other, it would ap-
pear to have been substantiated, but when we consider all
the surrounding circumstances, the fact that in her daily
life with her children at home, that the children utterly, by
their testimony, negative any such disposition on the part
of their mother, and the fact that, among all the friends and
acquaintances in the city of Buffalo, that the plaintiff has
not been able to bring here any one to corroborate his claim
as to the disposition of his wife; the fact that the exact lan-
guage of Mrs. Pierce upon that occasion has been carried in
the minds of these parties so long that now, without any con-
sultation, they are able to go on the witness stand and re-
peat almost verbatim, just what they claim to have been
said, and use the same language, to my mind is a sus-
picious circumstance, and one of the strongest circumstances
against the idea that such an interview occurred; at any
rate, the testimony is such that I am unable to find by even
a balanced testimony—to say nothing of a preponderance
of the testimony that such a scene occurred, that I am un-
able to find any grounds whatever under the statute, which
would entitle the plaintiff to a divorce."

Although the statement of this case which we have made
is one of considerable length, it must be conceded that it
does not detail all the allegations of the pleadings, nor does
it fully state the evidence. Salient and substantial points
only can be mentioned. We cannot enter upon a detailed
discussion of the evidence. To do so would unnecessarily
lengthen this opinion and serve no good purpose. Appel-
lant is represented by eminent counsel who have presented his
cause in a skillful manner and have prepared briefs for this
court in which, with rare ability, they review, discuss, and
analyze the evidence. Yet their arguments have been com-
pletely answered by respondent's counsel. We are com-
pelled to announce as did the trial court, that we are "unable
to find any grounds whatever under the statute which would

entitle the appellant to a divorce." The record convinces us that appellant has deserted his wife and children without just cause. In a few instances, respondent, in the presence of the children, did make impatient and bitter remarks relative to appellant. This she admits, but such remarks, which were provoked by his conduct, do not constitute a ground for divorce. We do not credit the statements of the witness Berguer. Undisputed circumstances and respondent's testimony satisfactorily dispute and dispose of the alleged New York incident to which appellant and the witness Shaw have testified. There is no showing of conduct on respondent's part which we can accept as an excuse for appellant's abandonment of her and the children.

Appellant contends that by the allegation which respondent made in her complaint for a divorce *a mensa et thoro*, which we have quoted, she in effect charged him with adultery. We do not so conclude. She made no such charge. Appellant and his counsel seem to infer that she did, but if the allegation is considered with other averments of her complaint, it becomes apparent that she was pleading his conduct to establish his abandonment of her. Be that as it may, appellant did not answer the charge. On the contrary, as soon as the complaint was filed, he yielded to her demands relative to the assignment of the life insurance policies, and thereby caused her complaint to be dismissed, instead of defending the same.

The only serious contention appellant can and does make is that, as it has become apparent that he and respondent can no longer live together, he is entitled to a divorce under subd. 7 of § 982, Rem. & Bal. Code, which provides that "a divorce may be granted upon application of either party for any other cause deemed by the court sufficient, and the court shall be satisfied that the parties can no longer live together." Counsel insist that appellant and respondent will never renew their marital relations, that the unhappy differences recognized and mentioned in the articles of separation

will always continue, that no possible good can result from a continuation of the marriage relation, that under such circumstances good morals and public policy demand a divorce, that our statute does not stop with cruel treatment and personal indignities as a ground for divorce, but that it confers upon the court the power to grant a divorce for any other cause, when it becomes apparent that the parties can no longer live together, and that sufficient cause has been here shown to call for an exercise of such discretion. No sufficient showing has been made to justify us in awarding a decree in appellant's favor against the protest of the respondent who has done no wrong. In her pleadings and evidence, she has alleged and testified that she will again receive appellant in her home; that she will live with him as his wife; that she will do all she can to renew their former relations and make him a happy home, and that she will forgive and forget the past. These offers, which she has repeatedly made and still makes, have been continuously and persistently rejected. The record is devoid of even a suggestion that he at any time has sought a reconciliation, or consented to live with his wife and family.

This court has commented on and construed subd. 7 of § 982, Rem. & Bal. Code, in the following cases: *McDougall v. McDougall*, 5 Wash. 802, 32 Pac. 749; *Colvin v. Colvin*, 15 Wash. 490, 46 Pac. 1029; *Stanley v. Stanley*, 24 Wash. 460, 64 Pac. 732; *Wheeler v. Wheeler*, 38 Wash. 491, 80 Pac. 762; *Bickford v. Bickford*, 57 Wash. 639, 107 Pac. 837. In *Colvin v. Colvin, supra,* we said:

"We do not think it was intended by the legislature that a divorce should be granted in every case wherein it should be found 'that the parties can no longer live together,' and where, as here, their failure to live together is due to their own obstinacy and stubbornness, we think a divorce should be denied. It is not the policy of the law that divorces should be granted merely because parties 'from unruly temper' or mutual wranglings live unhappily together. In order to have relief, it is not required that the party complain-

ing should be wholly without fault, for the law recognizes the weakness of human nature, and measures the conduct of the parties by the standard of common experience. But where the parties to a divorce suit are *in pari delicto*, the conduct of each being a constant aggravation to further offense by the other, no divorce will be granted at the instance of either party. *Cate v. Cate*, 53 Ark. 486, 14 S. W. 675."

If a decree will not be granted when the parties are *in pari delicto*, surely one should not be granted upon the application of the only party who is in fault, and against the other spouse who has done no wrong but is protesting against a decree. In *Wheeler v. Wheeler, supra*, we said:

"But this section does not say, and was not intended to mean, that the mere fact that the parties can no longer live together is sufficient upon which to base a decree of divorce. According to the plain wording and meaning of the section, there must be some cause other than those stated in the section deemed by the court sufficient; and, in addition thereto, the court shall be satisfied that the parties can no longer live together."

Appellant cites *Bloom v. Bloom*, 57 Wash. 23, 106 Pac. 197, 135 Am. St. 965, but in that case no statement of facts containing the evidence upon which findings had been made and a decree had been granted was before this court. Recognizing the discretion reposed in the trial judge, we liberally construed his findings and sustained the decree. The later case of *Bickford v. Bickford, supra*, is in full accord with the views herein expressed. We are unable to find that respondent has done any wrong, that she has been at fault, that she has abandoned appellant, or that she has given him any ground for a divorce; and we would not be justified in directing a decree against her objection and protest. We are especially constrained to so hold in view of the unfounded charge which appellant has made of the alleged incident in his New York office, and which we find has not been sustained by the evidence. Although we have discussed this case, the pleadings, and the evidence at considerable length,

we do not wish it to be understood that we have stated, reviewed, or commented upon all the facts involved. We have read the entire record with painstaking care, are thoroughly familiar with its contents, have mentioned salient points only, and will state our conclusion that any fair discussion of other facts which we have not mentioned would only strengthen and fortify the position we have taken.

The trial court allowed respondent $2,000 for her expenses and costs, and $3,000 for attorney's fees. On this appeal, she has applied to us for an allowance of additional attorney's fees for services rendered in this court. In view of the allowance made by the trial judge, and of the further fact that respondent is financially able to meet any additional expense which she may have incurred, we have concluded that no further allowance should be made.

The judgment is affirmed.

DUNBAR, C. J., ELLIS, and MORRIS, JJ., concur.