[No. 30052. Department One. November 29, 1946.]

GLADYS E. SVARVERUD, *Respondent and Cross-appellant,* v. GEORGE M. SVARVERUD, *Appellant.*[1]

[1]Reported in 174 P. (2d) 779.

574

*Michael J. Kerley,* for appellant.

*Reba J. Hurn* and *Brown & Huneke,* for respondent and cross-appellant.

JEFFERS, J.—This is an action for divorce instituted by Gladys E. Svarverud against her husband, George M. Svarverud, in the superior court for Spokane county. The events leading up to the interlocutory decree of divorce in the cause now before us, which was filed April 29, 1946, and from which this appeal was taken, are summarized as follows:

Mr. and Mrs. Svarverud were married in Eugene, Oregon, in 1929. Three children were born of this marriage: Lawrence and Leonard, twin boys born December 20, 1930, and and another son, Dale, born November 16, 1938. After the birth of Dale, and while the family was living on a farm in Klickitat county, Washington, plaintiff, on June 1, 1940, left defendant, taking the children with her, and since the date last mentioned the parties have lived separate and apart. After leaving defendant, plaintiff took up her resi-

dence in Washington, where she and the children have at all times since resided.

About June, 1942, defendant husband became a resident of Oakland, California, and in June, 1944, purchased on contract a home in Oakland, the contract price being $9,250. The contract provided for monthly payments of one hundred dollars, and, at the time this action was tried, there was an equity in the home of about four thousand dollars. Defendant had also acquired household goods of the value of about two thousand dollars.

On or about March 13, 1942, plaintiff instituted an action for divorce against defendant, in the superior court for Spokane county. The basis for plaintiff's action is set out in paragraph 6 of the complaint, which we quote:

"That during their marriage the defendant, George Martin Svarverud, has been guilty of cruel treatment and other personal indignities rendering life burdensome in that he has on numerous occasions, unjustly and without cause, struck the plaintiff about the head and body causing numerous bruises and injuries; that on one such occasion he knocked plaintiff down and choked her; that defendant has wrongfully and unjustly, and without any provocation, used vile, offensive and abusive language to plaintiff; that the defendant, having the ability to do so, has failed and neglected to provide the plaintiff and the children of plaintiff and defendant with the common necessaries of life, and that plaintiff and defendant can no longer live together as husband and wife."

Defendant, by his answer, denied the allegations of paragraph 6 of the complaint, and thereafter the cause came on for hearing on the merits, both parties appearing and testifying. Defendant asked for no affirmative relief.

On September 24, 1942, the court entered findings of fact, conclusions of law, and a judgment. By the judgment, plaintiff's application for divorce was dismissed with prejudice. However, by the judgment, plaintiff was awarded the care, custody, and control of the minor children, the judgment also providing that the children should reside with their grandmother, Mrs. Laura J. Hanshew (plaintiff's mother), until the further order of the court. Defendant was given the

right of visitation. The judgment also provided that defendant should pay forty-five dollars per month for the support and maintenance of the children.

It may be stated here that in the proceeding just referred to, the trial court made no finding that plaintiff had deserted or abandoned defendant, nor was any finding made that plaintiff had left defendant without cause. The court merely found that plaintiff had failed to establish grounds for divorce.

The action to which we have last above referred is No. 108,384 of the records of the superior court for Spokane county.

In October, 1944, defendant came up from Oakland and instituted *habeas corpus* proceedings in the last above-entitled action, to obtain possession of the minor children. After a hearing, at which both of the parties were present and testified, the court made and entered findings of fact, conclusions of law, and judgment, wherein defendant was denied a writ of *habeas corpus,* and the court again placed the minor children in the custody of plaintiff, Mrs. Svarverud, with the additional provision that the children continue to reside with the parents of plaintiff, who were then living on a farm near Deer Park, in Spokane county. Again defendant was given the right of visitation.

In that proceeding, the trial court not only did not make any finding that plaintiff had left defendant without cause, but it declined to make a finding proposed by defendant that plaintiff's refusal to live with defendant was without cause.

Following the entry of the order of dismissal in the divorce action on September 24, 1942, and in accordance therewith, defendant paid the sum of forty-five dollars per month for the support of the children until October, 1944, when the above support provision was declared void by the superior court for Spokane county.

Following the entry of the judgment in the *habeas corpus* proceeding, defendant made no payments for the support of the minors, until an order was entered in the present action in June, 1945, requiring him to pay the sum of fifteen dollars per week for the support of the minors.

The complaint in the present action was signed by plaintiff on June 1, 1945, and was personally served on defendant a few days later in Spokane county. On August 17, 1945, plaintiff caused an amended complaint to be served on counsel for defendant, which amended complaint was filed August 21, 1945. The amended complaint made additional and much broader allegations as grounds for divorce than did the original complaint.

Plaintiff (cross-appellant) states in her brief that this action is based upon two grounds, to wit, nonsupport of the children, and Rem. Rev. Stat., § 982 [P.P.C. § 23-1], subd. 8, which provides:

"A divorce may be granted to either or both of the parties in all cases where they have heretofore lived or shall hereafter live separate and apart for a period of five consecutive years or more. In all such cases, the divorce may be granted on the application of either husband or wife, and either husband or wife shall be considered the injured party and the period of five years or more shall be computed from the time the separation took place."

The amended complaint is certainly broad enough to cover both the grounds above mentioned, and in view of the fact that so much of the argument of counsel for the respective parties, as well as the comments of the trial court, were directed to the allegations of the amended complaint, particularly to paragraphs 5 and 6 thereof, we shall set out those paragraphs:

"5. That defendant is now employed in or near San Francisco, and earns $110 a week; that his gross earnings in 1943 were over $3750.00 and a like amount in 1944; that since June of 1940 he has contributed nothing for the support of plaintiff; that for about two years, beginning in September, 1942, he paid the sum of $45.00 per month for the support of their three minor children; that in November, 1944, he wrote that he would never, never send another penny; that since October, 1944, the only money she has received from him has been under order of court entered in this action on June 29, 1945; that under said order the sum of $155.00 has become due and payable, of which amount defendant has paid $60.00, and is now in default in the sum of $95.00.

"6. That all times during their married life, defendant made excessive sexual demands on the plaintiff; that during the depression, and when they had two children, she insisted that no more children should be born until they were in position to give them proper care and some comforts, and told defendant that, unless precautions were taken, she would no longer live with him as his wife; that defendant agreed there should be no more children until both parties were willing; that defendant deceived her, and she first knew that such deception was deliberate on his part because defendant so told her in a letter written in October, 1944; that when she found the third child was coming, she refused further to live with defendant as his wife; that he made life so unpleasant for her that it was impossible for her to continue living in the same house with him; and finally, on June 1st, 1940, she took the three children, left the family ranch in Klickitat county, Washington; and they came to her parents' home, then at Four Lakes, in August, 1940; and she and defendant have lived separate and apart since June 1st, 1940."

Defendant's answer admitted the marriage, the birth of the three children, and that the parties have an equity in real and personal property in San Rafael county, California, of the approximate value of six thousand dollars, which property was acquired by defendant since the separation. The answer denied the allegations of nonsupport and the allegations of cruelty and deception contained in paragraph 6 of the amended complaint. The answer did not deny, and it is admitted, that the parties have lived separate and apart since June 1, 1940.

As an affirmative defense, the answer alleged that in 1940, plaintiff abandoned defendant, without justification, while the parties were living on a farm in Klickitat county, Washington, taking the children with her, and has ever since refused to return to defendant's home or to bring the children to his home; that defendant has on numerous occasions requested plaintiff to return and make a home for the parties and their children. The answer also referred to the prior divorce action and the judgment entered therein, and alleged that no appeal had been taken from that judgment. It was further alleged that defendant was able and

willing to provide a home for plaintiff and the children; that in February, 1945, defendant mailed his check for $250 to plaintiff, but that plaintiff refused to accept the envelope containing the check, and the same was returned to defendant by the United States post office. Other allegations were made in the answer, to the effect that plaintiff was dominated by her mother, and that plaintiff and her parents had persisted in a course of conduct calculated to alienate the affections of the children from defendant.

The amended reply denied the affirmative matter set out in the answer, except such as was admitted by the complaint.

The cause came on for hearing before the court on November 21, 1945, both parties being personally present in court and represented by counsel.

There was much discussion between counsel and the court relative to what counsel for plaintiff should be permitted to prove. Counsel for defendant contended that the testimony should be limited to the period since the entry of the judgment in the divorce action, on September 24, 1942. Counsel for plaintiff contended that, as to the five-year statute, it was a new ground for divorce, and that she should be permitted, if she could, to show that plaintiff had cause for leaving defendant.

As we understand the ruling of the trial court at the first hearing, it was that plaintiff could not show grounds for nonsupport, and that the testimony offered to support her allegations for a divorce under the five-year statute would be limited to the matter of the agreement not to have children and the deception.

Plaintiff was called to the stand, and after she stated her name, counsel for defendant objected to the introduction of any testimony under the allegations of pargraph 6, on the ground that the agreement not to have children could have been set forth in the prior divorce action. The objection was overruled. Plaintiff then testified as to the marriage in 1929; that the three children hereinbefore referred to were born of such marriage; and that she had lived in Spokane county for the last five years, and had the children with her. The

witness then testified to the property which had been acquired by defendant since their separation, in regard to which there is no dispute. Plaintiff then attempted to testify to matters relative to her claim of nonsupport, but an objection to such testimony was sustained. The following questions were then propounded to plaintiff:

"Q. While you were living with Mr. Svarverud you had some difficulty between yourselves adjusting sexual matters? A. Yes. Q. Your first children were twin boys? A. That is right. Q. Were you willing to have other children? A. Well, for a while, yes. Q. But none came for a while? Is that it? A. None came for a while. Q. And then what happened between you and your husband? What sort of an understanding? A. Well, we just didn't get along as far as sexual matters were concerned, and the financial setup was not good, either, and it was agreed that there would be no more children until both parties agreed that there were the means and a home for them. Q. And that was on your part the strongest agreement and understanding you ever made, was it? A. Very definitely. Q. Now, in spite of that agreement, was ever any suggestion made by you that this agreement be carried out by an operation in which a knife was involved? A. Definitely not. Q. And in spite of this agreement you found you were having a baby? A. That is right. Q. Mr. Svarverud insisted he didn't know how come? A. He even denied parentage of it. [An objection to the denial of parentage was sustained.]

"Q. And you received a letter from Mr. Svarverud in October of 1944? [Plaintiff's ex. 5] A. Yes, sir. Q. You have this letter with you? A. I do. . . . Miss Hurn: Well, state whether or not this was the first knowledge that you had. A. That was the first knowledge that I had that he admitted that he had known about it. . . . Q. Then, Mrs. Svarverud, after you found out a child was coming, did you refuse to live with your husband? . . . A. I did. Q. And at no time since your discovery have you lived with him as his wife? Is that correct? A. That is right."

Plaintiff's exhibit No. 5 is a letter written to plaintiff by defendant, from Oakland, California, on October 24, 1944. In this letter, defendant stated that the night before he had been talking with someone by the name of Carl. We quote the following portion of the letter:

"I then said 'Carl, maybe I had better tell you just what the trouble between Gladys and I are,' so I began at the beginning. I told him how I begged you to try and have a daughter and your refusal—how I became desperate and finally one night deceived you so that you became pregnant. And then that I tried to lie out of my knowledge of any such doings and how angry you were when you found out you were going to have a baby."

The letter then refers to the time defendant took plaintiff home from the hospital after Dale was born, and continues:

"That is most likely one time that a little wisecracking caused a whole family to break up and caused more misery and grief than any similar joke in all history of mankind. Of course I'll never forget the scene. It was when I came to take you and Dale home from the hospital. There was a little snow on the ground and the nurse carried Dale out to the car. After you had got settled and we were ready to start the nurse said to me 'Now you must bring Gladys back,' and I said, 'Oh sure, in about a year.' The nurse said, 'Oh, you mustn't wait that long.' 'But,' I said, 'It takes all of that long,' and then she got a big kick out of it and I thought I had really 'pulled' a good one. But you were too serious and you misconstrued my meaning. Consequently you didn't dare to accommodate me and it made me ornery and led to your insulting me in Eugene."

Plaintiff was asked what would happen when she refused to accommodate defendant.

"A. A good many times I was kicked out of bed when I refused to do as he wished, but it was generally just before time of normally getting up."

An objection to the last question was sustained, apparently upon the ground that it was an evidence of cruelty which could have been pleaded and testified to at the former hearing.

"Q. You left June 1st [1940]? A. I did. . . . Q. But you still do refuse to live with your husband, is that correct? A. I do. Q. And what effect did his deceit have upon you and your attitude toward him? A. Well, it just confirmed my feelings before. . . . Q. Well, do you have any confidence in his word? A. His word means nothing to me."

On cross-examination, plaintiff admitted that she knew she was pregnant when the doctor told her she was going to have another baby, but that she was not sure of defendant's deception until she received his letter of October 24, 1944.

Then followed a colloquy between counsel as to what was decreed by Judge Webster in the former case. The effect of the argument of counsel for plaintiff was that this was a different situation, a new cause for divorce, the five-year separation statute, and that plaintiff was entitled to show certain acts which might not in themselves be grounds for a divorce, but which did show that plaintiff was not wholly at fault in leaving defendant.

"THE COURT: Well, that is the analogy I am taking from the Evans case [*Evans v. Evans*, 182 Wash. 297, to which we shall later refer], that neither one of the acts in the *Evans* case would have constituted desertion, for instance; neither one could have gotten a divorce for desertion in the *Evans* case, but they held they were both at fault in bringing about or continuing the separation."

After further colloquy between court and counsel, plaintiff was asked the following questions on redirect examination:

"Q. Mrs. Svarverud, you have heard the judge's ruling that you stayed in the home of your husband or that you stayed in the house for a year and a half or such a matter after Dale was born? A. Yes. Q. Will you explain what happened within two or three days of the first of June which caused you to take the children and leave? A. It was on the 25th of May, I believe; somewhere right close to that. Anyway, it was graduation exercises at the school that the children attended there. That is a grade and high school together. And we came home from that program, and he made his demands again and was going to make me submit to him whether I wanted to or not, and he started in and grabbed my hair and was going to make me submit to him right then. He got me onto the bed, into a big chair and all around the house, and the children were there and they tried to interfere and he knocked them off and told them to go back to bed where they belonged. It was hot weather and they were sleeping right in the same room. He said if I couldn't behave myself and act like a wife should I should get up and get out, and I got up and got out. Q. And then

you left within a very short time? A. Yes, just as soon as I could get transportation."

On recross-examination, plaintiff admitted that her husband was not at home when she left and did not know that she was leaving.

Then again occurred a colloquy between counsel as to what plaintiff was entitled to show under the five-year separation statute, counsel for defendant contending that plaintiff was not entitled to show any acts of cruelty occurring prior to the former divorce action.

The court then discussed at length the statutes, and seemed to be of the opinion that plaintiff was foreclosed by the former decree from showing any acts of cruelty occurring prior to that decree, and that all that was left of her testimony was defendant's statement that if plaintiff couldn't be a wife to him she could get out. The court stated:

"I think I will at this time sustain the challenge to the sufficiency of the evidence with the understanding that I will, on motion for a new trial or for reconsideration of my oral decision, I will give you an opportunity— It will provide an opportunity, and I will give consideration to the matter of some further authorities, as you have requested."

After the above ruling, counsel for defendant moved for a dismissal of all that part of his answer and cross-complaint wherein affirmative relief was asked. Then again several pages are consumed with a colloquy between court and counsel, after which it seemed to be agreed that counsel for defendant would present findings and counsel for plaintiff would present her petition for rehearing and reconsideration on December 19, 1945.

On the day last mentioned, the court reopened the case for the purpose of hearing testimony on the question of nonsupport, and on February 20, 1945, the matter again came before the court, at which time plaintiff was present and represented by counsel, and defendant appeared only by counsel. The testimony as to nonsupport was limited to the time since the entry of the judgment in the *habeas corpus* proceeding, or from October, 1944.

Plaintiff was again called to the stand, and testified that,

with the exception of five dollars sent as a Christmas present to the boys in 1944, defendant had contributed nothing for the support of the children since the entry of the decree in the *habeas corpus* proceeding, up to July, 1945, when an order was entered in the present action, directing him to contribute fifteen dollars per week.

Plaintiff further testified that the children were well taken care of at the home of her parents; that she had been working during the years of separation, and had regularly contributed to the support of the children. It appears that the minors have been and are now attending school regularly, and that, while plaintiff works in Spokane, she goes to Deer Park every weekend to be with the children.

Mrs. Hanshew, plaintiff's mother, was called and testified generally that the health of the boys had been good; that plaintiff contributed regularly to the support of the boys; that she never received any money from defendant for their support, except when he paid under court order; that she was willing to continue to look after the boys until plaintiff could establish a home of her own.

Lawrence Svarverud, one of the fifteen-year-old boys, was called and testified that he saw his mother every weekend; that he liked to live with his grandparents; that under present conditions he would rather be with his mother than with his father; that he had seen his father two or three times in the last five years.

After Mrs. Hanshew had testified, counsel for plaintiff indicated that he wanted to call one of the boys, who could not get there until two o'clock, and stated that if counsel for defendant wanted to proceed, it was satisfactory with him. Counsel for defendant thereupon called Mr. Getchell, a court reporter who had taken the testimony of defendant at the hearing held on June 29, 1945, and this witness proceeded to read from his notes. No objection was made to such procedure. Mr. Getchell read from defendant's testimony relative to his home in Oakland, what it consisted of, etc.; the kind of work defendant was doing; that for the last six months he had been earning $110 per week; that, if he should be given the care and custody of the children, his

mother and a niece, who live in Oregon, would go to Oakland and look after the boys; that in March of 1945 he sent his wife a check for $250, but the letter was returned, refused.

May we say here that while the envelope in which it was claimed the letter and check were placed was introduced, neither the letter nor the check was produced, and the trial court was of the opinion, as shown by its memorandum opinion, that the $250 check was not offered.

At the close of plaintiff's case, defendant interposed a challenge to the sufficiency of the evidence to entitle plaintiff to any relief and, at the close of the case, moved for a dismissal.

As indicated by its memorandum opinion, the court was of the opinion plaintiff had not shown facts sufficient to entitle her to a divorce under the five-year statute, but that she had established facts sufficient to entitle her to a divorce for failure to contribute to the support of the children since the entry of the *habeas corpus* judgment, the court stating:

"The legal duty on the part of the defendant to support the children where the court placed them was definitely established by the order in the *habeas corpus* proceeding granting custody to the mother. The fact that he had offered to support them in his own home would not relieve him of this obligation. *Esteb v. Esteb,* 138 Wash. 174."

On April 26, 1946, the court made and entered findings of fact and conclusions of law, and on April 29th following, an interlocutory decree of divorce in favor of plaintiff. Defendant has appealed from the decree entered, and makes some thirteen assignments of error. Plaintiff has cross-appealed and has assigned error on the refusal of the court to grant her a divorce upon the grounds set forth in Rem. Rev. Stat., § 982, subd. 8; in restricting her proof; and in entering conclusion of law No. 1.

The trial court found (finding No. 10) that, following the entry of the judgment in the *habeas corpus* proceeding, appellant failed and refused to make any provision whatever for the support of the minor children and made no payments of any kind therefor until an order of court was en-

tered in the present action on June 29, 1945, requiring him to pay the sum of fifteen dollars per week for their support, pending this action; that such payments were made up to March 20, 1946.

Finding No. 11:

"That plaintiff is a fit and proper person to be given the sole care, custody and control of the three minor children of the parties."

The court made the following conclusion of law:

"1. That plaintiff is entitled to a divorce from the defendant by reason of his failure and refusal to make any provision for the support of his minor children *following the judgment in the habeas corpus proceedings*; but that the separation of the parties for more than five years, as alleged in paragraph 6 of plaintiff's amended complaint, does not entitle her to a divorce on that ground." (Italics ours.)

Appellant assigns error on the court's refusal to sustain his challenge to the sufficiency of the evidence made at the close of plaintiff's case; in denying his motion for a dismissal at the conclusion of the testimony; in making and entering findings of fact Nos. 10 and 11, and that part of conclusion of law No. 1 wherein the court concluded that cross-appellant was entitled to a divorce for appellant's failure to contribute to the support of the children after the *habeas corpus* decree. Other assignments of error were made by appellant, and we shall later refer to those we deem material.

The primary question presented by appellant is whether or not that part of conclusion of law No. 1 above referred to was justified by the facts or the law.

No contention is made that appellant was obligated to support cross-appellant during this period of separation, and the above conclusion of law and the judgment entered in accordance therewith were based upon the theory that the minor children were part of appellant's family, although not living in his household, and that, under the facts presented, cross-appellant was entitled to a divorce because of appellant's failure to contribute to the support of the family (the minor children).

Again may we say that it is admitted that the minors have at all times during this separation been well provided for by cross-appellant and her parents. Every necessary medical and other care has been furnished them.

No decree of divorce was ever granted to either of the parties hereto, prior to the decree in the instant case. It is apparent, then, that the care, custody, and control of the children had never been awarded to either party by a divorce decree.

We think there can be no question that the trial court erred in the former divorce proceeding, when, after dismissing the action, it proceeded to award the care, custody, and control of the children to cross-appellant and required appellant to contribute to their support. Another judge of the superior court for Spokane county so decided.

The trial court, in the instant case, seems to have concluded that the legal duty to contribute to the support of the minors was definitely fixed by the *habeas corpus* judgment, regardless of what his legal obligations may have been prior thereto.

We are unable to conclude that, under the facts in this case, such was the effect of the judgment last above referred to.

In addition to the facts hereinabove set out, we call attention to the fact that no court had ever expressly found that cross-appellant had left the home for cause; neither had any court found that cross-appellant had left the home without cause, during the period in which the trial court in the instant case found appellant has failed to contribute to the support of the family. See 39 Am. Jur. 689, § 53.

"Habeas corpus is not a proper proceeding in which to determine the right to guardianship; to appoint or to remove a guardian; to determine the regularity or propriety of his appointment; *or to make provision for the support of infants.*" 39 C. J. S. 570, § 41. (Italics ours.)

On p. 572 of the same volume, we find this statement:

"The paramount considerations and issues in habeas corpus proceedings involving the custody of a minor child are the welfare and interest of the infant."

"Proceedings in habeas corpus to determine the right to the custody of a child may not be extended to an adjudication of claims, money demands, or unsettled accounts between the parties; and it is a general rule that the court is without power to make an award for the child's support." 25 Am. Jur. 206, § 81.

It may be admitted that children may be considered as members of the father's family, although not members of his household, and it may also be admitted that the father may be required to contribute to the support of his minor children, notwithstanding the fact that such children have, by a decree of divorce, been awarded to the mother; and in a case where the mother has, by a divorce decree which made no provision for the support of minor children, been awarded the care, custody, and control of such minors, the mother may maintain a separate action against the father to compel him to assist in the support of the minors. See *Gibson v. Gibson,* 18 Wash. 489, 51 Pac. 1041; *Ditmar v. Ditmar,* 27 Wash. 13, 67 Pac. 353, 91 Am. St. 817.

However, we have been cited to no case which purports to hold that a judgment in a *habeas corpus* proceeding, under facts such as we have in this case, is sufficient in and of itself to establish the legal liability of the father to contribute to the support of his minor children.

The case of *State ex rel. Deshler v. Deshler,* 114 Wash. 507, 195 Pac. 226, is the only case called to our attention in which a *habeas corpus* proceeding was instituted to obtain possession of a minor, where neither the father nor the mother had, by a prior divorce decree, been awarded the care and custody of the child involved. In the cited case, all that this court determined was that the welfare of the minor would be best served by leaving him with the father rather than the mother.

We are of the opinion that, under facts such as presented in the instant case, the only thing that was or could have been determined by the judgment in the *habeas corpus* proceeding was that appellant did not show a superior right to the custody and control of the minors and that it was for

the best welfare of the minors that they be left with their mother, in the home of her parents.

While we are of the opinion that, under most circumstances, there is a moral duty cast upon the father to contribute to the support of his minor children, whether living in his immediate household or not, we are satisfied that, under the facts in this case and the law applicable thereto, there was no legal duty cast upon appellant by the *habeas corpus* judgment which would constitute the basis for a divorce by cross-appellant on the ground of nonsupport. We conclude that the trial court erred in granting cross-appellant a divorce on the ground of nonsupport.

We shall next discuss the contention of cross-appellant that the court erred in refusing to grant her a divorce under Rem. Rev. Stat., § 982, subd. 8, hereinbefore set out.

Appellant, throughout his brief, argues that cross-appellant deserted him, and that the effect of the decree in the prior divorce action was that cross-appellant left the home without cause. We are unable to agree with this contention. As hereinbefore stated, no court has ever made a finding to the effect that cross-appellant deserted or abandoned appellant, nor has any court, including the instant proceeding, ever made a finding to the effect that cross-appellant left the home without cause.

It will be remembered that the trial court was of the opinion that cross-appellant could not show any act or acts of cruelty on the part of appellant which may have occurred prior to the former divorce decree, other than as hereinbefore stated, in support of her complaint for a divorce under the five-year statute, even though such acts might show that cross-appellant was at least not wholly to blame for the separation. It should be kept in mind that cross-appellant could not have brought an action under the five-year statute at the time she instituted the prior action. The present action, then, is based upon a new ground not available to cross-appellant at that time.

We have had three cases before us involving the construction of § 982, subd. 8, *supra*, namely, *Pierce v. Pierce,* 120 Wash. 411, 208 Pac. 49; *McGarry v. McGarry,* 181 Wash.

689, 44 P. (2d) 816; *Evans v. Evans,* 182 Wash. 297, 46 P. (2d) 730.

In the *Pierce* case, *supra,* Henry J. Pierce commenced an action for divorce under § 982, subd. 8, *supra.* He contended that he was entitled to a divorce upon the sole ground that the parties had lived separate and apart for a period of more than five consecutive years, regardless of the cause or fault of their living separate and apart. The defendant wife, while admitting that they had lived separate and apart for more than five years, resisted the granting of a divorce, upon the ground that their separation had at all times been and was then *wholly* the result of plaintiff's own election and fault and against her will and consent. Plaintiff was awarded a divorce by the trial court, and the defendant wife appealed. The opinion states:

"There was tendered in behalf of the defendant, upon the trial in the superior court, evidence which we regard as *conclusively showing* that the living of these parties separate and apart has at all times been against the will and consent of the defendant, and without fault on her part, and *wholly* the result of the *election and fault* of the plaintiff." (Italics ours.)

Referring to the evidence tendered in the cited case by defendant wife, we stated:

"The evidence so tendered by the defendant consists of her own testimony and a judgment of the superior court for King county which was affirmed by this court by our decision rendered in *Pierce v. Pierce,* 68 Wash. 415, 123 Pac. 598, wherein it was adjudicated in substance that their living separate and apart was not the fault, or with the consent, of the defendant; but was the result of the fault and election of the plaintiff."

In the case of *Pierce v. Pierce,* 68 Wash. 415, 123 Pac. 598, referred to in the above quotation, we stated: "The record convinces us that appellant has deserted his wife and children without just cause."

We quote again from *Pierce v. Pierce,* 120 Wash. 411, 413, 208 Pac. 49:

"We feel warranted, therefore, in proceeding in the light of the facts which we deem fully established, that the

separation of these parties has at all times been *wholly* the result *of the fault and election of the plaintiff*, and not the result of the fault or voluntary consent of the defendant." (Italics ours.)

We have set out above the facts upon which the decree in the *Pierce* case was based. We emphasize the fact that in that case there was a prior action between the same parties, in which the court held, as stated, "that appellant [husband] has deserted his wife and children without just cause."

In the instant case, appellant did not take the witness stand.

We now quote from the *Pierce* case (120 Wash. 411, 425), where, after having discussed similar statutes and cases from other jurisdictions, we stated:

"The law was changed in that it created what we deem to be nothing more nor less than a rule of *prima facie* proof, to wit, that an applicant for divorce, pleading and showing that there has been a separation and living apart for a period of more than five years, shall *prima facie* be presumed to be the injured party and be entitled to a decree of divorce. In other words, when the applicant has proceeded thus far, he or she has made out a case which, in the absence of other proof, entitles him or her to a divorce as a matter of right. But that, to our minds, does not argue that such proof becomes conclusive upon the question of who is 'the injured party' in the sense of precluding the opposing party from showing by proper evidence who is in fact 'the injured party.' "

■■ It seems to us that, under the *Pierce* case, which is strongly relied upon by appellant, when cross-appellant testified that the parties hereto had lived separate and apart for a period of five years, she made out a *prima facie* case, and, there being no evidence in this case tending to show that the separation was caused *wholly* or at all by the fault of cross-appellant, the court erred in refusing to grant her a divorce under the five-year statute.

In *McGarry v. McGarry*, 181 Wash. 689, 44 P. (2d) 816, the court stated that the case was controlled by *Pierce v. Pierce*, 120 Wash. 411, 208 Pac. 49.

In *Evans v. Evans,* 182 Wash. 297, 46 P. (2d) 730, we referred to the *Pierce* case, *supra,* and stated that it was held in that case that the statute here under consideration did not entitle a husband to a divorce from his wife where the separation was due *wholly* to his fault and was not consented to by the wife.

In the *Evans* case, an action for divorce was instituted by the husband under Rem. Rev. Stat., § 982, subd. 8. The trial court denied plaintiff a divorce, and granted defendant separate maintenance. In reversing the judgment and holding that the husband was entitled to a divorce, we stated:

"The separation in this case cannot be said, under the evidence, to be wholly due to the fault of the husband. It is undoubtedly due, in part at least, to the fault of both parties."

We adopt, as applicable to the instant case, the following statement found in the *Evans* case, *supra*:

"If this case does not come under that statutory provision, it is hard to conceive of a case that would. The legislature, in passing the act, must have intended that it be given some meaning. To hold that the parties had not lived separate and apart for the period of five years within the contemplation of the statute, and that neither would have been entitled to a divorce, would be to practically nullify the act of the legislature, and this the court has no right to do."

We conclude that cross-appellant was entitled to a divorce herein under the five-year statute: first, because she made out a *prima facie* case when she testified that the parties had lived separate and apart for five consecutive years, and appellant introduced no evidence tending to show that such separation was caused wholly by cross-appellant's fault; and second, because we are of the opinion the testimony of cross-appellant, in addition to making out a *prima facie* case, tended to show that the separation was at least partly due to the fault of appellant.

While we are of the opinion that cross-appellant could not, at the time the present action was instituted, have brought an action for divorce on the ground of cruelty

or nonsupport, and in support of the later action introduced evidence of acts which were known to her at the time of the prior action, yet we think the trial court erred in not permitting cross-appellant, in this action under the five-year statute, to show, if she could, acts of appellant tending to show that he was at least partly to blame for the separation. To the extent and for the purpose herein indicated, we do not believe the judgment in the prior divorce action was *res adjudicata.*

■ Appellant also bases error upon the making of conclusion of law No. 3, which provides:

"That in lieu of a division of property between the parties, plaintiff be given a judgment against defendant in the sum of $2,000.00, which judgment shall be payable at the rate of $25.00 per month, commencing July 1, 1946; and that all other assets of this community which are situated in the state of California, shall be awarded to defendant as his separate property, but charged with said judgment, and when said judgment shall have been paid in full, plaintiff shall be and is hereby directed to execute any instruments necessary to place title thereto in defendant."

We are of the opinion the evidence amply supports the above conclusion, and that the trial court did not err in making it.

■ We are also satisfied that the trial court was justified by the evidence in making conclusion of law No. 4, which states:

"That until the further order of this court, defendant shall pay to the plaintiff, through the clerk of this court, for the support of the above named minor children, the sum of $75.00 per month, commencing March 20, 1946, $75.00 to be paid before May 1st, 1946 and $75.00 on the 20th day of May, 1946 and on the 20th day of each and every month thereafter."

■ As we understand the judgment entered in this case, no right of visitation was given to the father. We do not believe he should be deprived of this right, but to the contrary, we are of the opinion he should be given the right of visitation at reasonable times and places.

For the reasons herein stated, the judgment of the trial court must be and it is reversed on both the appeal of appellant and cross-appellant, with instructions to enter findings, conclusions, and judgment in favor of cross-appellant, in accordance herewith.

Neither party will recover costs on this appeal.

MILLARD, C. J., ROBINSON, and SCHWELLENBACH, JJ., concur.

SIMPSON, J., concurs in the result.

January 6, 1947. Petition for rehearing denied.

